IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 12, 2006

## JEROME SAWYER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-27587     James C. Beasley, Jr., Judge**

---

### No. W2005-01813-CCA-R3-PC  - Filed March 15, 2007

---

Following a jury trial, Petitioner, Jerome Sawyer, was convicted of aggravated sexual battery and sentenced to eighteen years in the Department of Correction as a Range II, multiple offender. This Court affirmed his conviction. Petitioner then filed a petition for post-conviction relief. After appointing counsel and conducting several hearings, the trial court denied his petition for post-conviction relief. In his appeal, Petitioner argues that he is entitled to post-conviction relief because (1) trial counsel provided ineffective assistance of counsel, and (2) the post-conviction court improperly allowed trial counsel to be examined outside of Petitioner's presence. After a thorough review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Robert Wilson Jones, District Public Defender; Phyllis Aluko, Assistant Public Defender; and Michael Johnson, Assistant Public Defender, Memphis, Tennessee, for the appellant, Jerome Sawyer.

Robert E. Cooper, Jr., Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; William L. Gibbons, District Attorney General; and Scot Bearup, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

## I. Background

The facts as set forth by this Court on direct appeal are as follows:

Recounting the evidence in the light most favorable to the state, the defendant was described as a family friend of Tonya Bobo and her three children and as "god-

daddy" to C.B., one of Ms. Bobo's daughters and the victim in this case. On October 22, 1999, the defendant came to the Bobo residence at 858 Alaska Street about 5:30 in the afternoon. Tonya Bobo was at work. Present in the house were C.B., age six; her sister, N.C., age seven; her brother, C.C., age eight; Felicia Pullen, nineteen, who resided at the house with Ms. Bobo's brother and who was "babysitting" Ms. Bobo's children at the time; and Ms. Pullen's small child.

According to Ms. Pullen, the defendant went to C.B.'s bedroom to help her clean out her closet and throw away old shoes. Ms. Pullen testified that the defendant called C.B. to come to the bedroom, and he sent N.C. and Ms. Pullen's child out of the bedroom and into the living room, where Ms. Pullen was watching television. A few minutes later, Ms. Pullen sent N.C. back to check on C.B., and N.C. returned to report that C.B. and the defendant were reading a book; however, C.C. went to the bedroom door, peeked inside, and came back to the living to report to Ms. Pullen that the defendant had C.B. playing with his "privacy." Ms. Pullen "went and got her and . . . told her to sit on the [living room] couch until her mother got home." C.B. then went into the kitchen to get a bowl of cereal. Afterward, the defendant called C.B. back into the bedroom. Ms. Pullen sent N.C. to the bedroom to retrieve C.B. The defendant then emerged from the bedroom, and Ms. Pullen noticed via a bulge in his pants that his penis was erect. The defendant returned to the bedroom where C.B. was, and after five or ten minutes, Ms. Pullen saw C.B. "[shoot] across the hall with nothing on" and go into the bathroom.

At some point during these events, Ms. Pullen called Ms. Bobo at work, but Ms. Bobo had already left work to go home.

Ms. Pullen testified that, when the defendant arrived at the home, C.B. was dressed in the jeans and shirt that she had worn to school. When she emerged from the bathroom into which she had "shot" unclothed, she wore a dress with Dalmatians on it. She came into the living room and seemed about to cry. The defendant came into the living room and asked C.B., "[W]hat you got that frown on your face for? You better not tell nobody. I ain't going to buy nothing else."

Ms. Bobo's male friend, Gus, arrived at the residence at this time, and the defendant departed. Gus engaged C.B. in a conversation, and Ms. Pullen testified that C.B. stated that the defendant made C.B. "touch his thing" and that he touched her "down there." Ms. Pullen quoted C.B. as saying that "white stuff" had come from the defendant's penis. Ms. Pullen testified that she and Gus found C.B.'s jeans in the bedroom. She found "white stuff" on the zipper area of the jeans and observed that the jeans were wet in this area.

C.B. testified that when she first went into her bedroom with the defendant he unzipped his pants and took out his "nut-nut," which was "big." The defendant asked her to touch it, but she declined. He touched her in her vaginal area and on her bottom over her clothes. When he pulled her toward him, he pulled down her pants and underwear and touched these areas. C.B. testified that she saw something on her pants that looked like milk, but she denied telling anyone that she saw the "white stuff" come from the defendant. After she went to the bathroom to wash, she put on her pajamas, which she was wearing when her mother came home.

N.C. testified that the defendant came to the home to help her and C.B. clean the old shoes out of their closet. C.B. and the defendant were in the bedroom alone, and N.C. went to the door and peeked inside. She saw the defendant pulling on C.B.'s arm. She heard C.B. tell him to quit. Later, she saw C.B. go into C.C.'s room wearing a towel. N.C. saw C.B. emerge from the bathroom wearing jeans and did not see her wearing pajamas. C.B. looked mad. The defendant later came out of the bedroom and told C.B. not to look at him "like that." The defendant, who had something "poking" out in his pants, then left the home.

Tonya Bobo testified that she was at work on the evening of October 22, 1999. She was scheduled to work until 10:00 p.m., but her boyfriend, Anthony Augustus, called early in the evening and asked her to come home. Ms. Bobo left work and arrived home about 7:00 p.m. She found C.B. wearing a dress. C.B. told Ms. Bobo what happened, and Ms. Bobo called the police. When the officers arrived, Ms. Bobo showed them C.B.'s jeans and underwear that had been left laying in the floor. The officers collected the clothing and took C.B. to Memphis Sexual Resource Center.

C.B. was examined at the center, after relating to the nurse that her godfather had touched her in front and on her bottom. The examination was normal except for some red lines in the vaginal area and some swelling around the anus. Even though the medical expert testified that these limited findings were consistent with a complaint of digital assault, she opined that the red lines could have been signs of irritation caused by fecal material that had not been cleaned from C.B.'s anal area and that the anal swelling was "nonspecific." She further testified that the laboratory report on C.B.'s jeans reflected that no semen was present on the jeans.

*State v. Jerome Sawyer*, No. 2001-01923-CCA-R3-CD, 2002 WL 31259485, at *1 -2 (Tenn. Crim. App., at Jackson, Aug. 27, 2002).

## II.  Post-conviction Hearing

At the post-conviction hearing, Lacrisha West testified she recalled an occasion at church when she overheard the victim telling her brother and sister that Petitioner did not touch her. Lacrisha West did not know what touching they were talking about, where or when the touching

occurred, or the specific body part Petitioner had allegedly touched. She recalled only that she overheard a conversation between the siblings in which the victim stated that Petitioner did not touch her.

Gwendolyn West, Lacrisha West's mother, testified that her daughter told her at the time of the incident that she overheard the victim telling her brother and sister that Petitioner did not touch her. Like her daughter, Ms. West did not know any of the specifics regarding the touch the children were discussing, including where and when it occurred.

Larita Sanders testified that she was engaged to Petitioner at the time of the incident. Ms. Sanders worked with Petitioner at Jones Fiber Products. On the day of the incident, Ms. Sanders and Petitioner went to her house together after work and stayed there until approximately five-thirty p.m. Petitioner then left the house to go and change clothes because the two of them were going to a movie with another couple. Petitioner was wearing baggy pants and an oversized, striped shirt. Ms. Sanders did not see Petitioner again until approximately seven o'clock p.m. when she picked him up at his house to go to the movie.

Ms. Sanders said that Petitioner went to the victim's house after leaving her house and before she picked him up for the movie. He stopped by the victim's house to help her sort her shoes. Following the movie, Ms. Sanders accompanied Petitioner to the victim's house because the victim's mother called Petitioner during the movie and asked him to come by and talk to her. When they arrived, neither the victim nor her mother were present. She and Petitioner waited on the couch together for approximately thirty minutes before the police arrived and arrested Petitioner.

Ms. Sanders was aware that Petitioner had previously been convicted of sexually abusing children. She also knew that he was tried and acquitted of abusing five children in Pine Bluff, Arkansas. She was not aware that he had been forced to resign from a job at the Y.M.C.A. and from a job as a daycare driver because he was allegedly fondling the children.

Larry Steagal testified that he worked with Petitioner and had known him for approximately two years prior to his arrest. Mr. Steagal said that he and Petitioner worked together on the day of the incident. Mr. Steagal recalled that Petitioner was wearing loose clothing that day.

According to Mr. Steagal, Petitioner talked about his god-children frequently and often complained that the house they lived in was "junky," "messy," and "dirty." He also complained that the children were not dressed well. Mr. Steagal said he had no knowledge of whether the allegations against Petitioner were true. Mr. Steagal was not aware of Petitioner's prior conviction for sexual abuse, nor was he aware that Petitioner had been asked to leave two prior jobs due to allegations that he was fondling children at work.

Katherine Himphill, the victim's great-aunt, testified that she had known Petitioner all of his life. She said that she thought the allegations against Petitioner were unfounded as did the victim's deceased grandparents who were living at the time of the incident. Ms. Himphill was aware that

Petitioner had previously been accused of sexually abusing children. She did not know about the allegations of abuse at the Y.M.C.A., nor did she know about the allegations that Petitioner had fondled children while working as a daycare driver.

Mary Anne Sawyer, Petitioner's sister, testified that Petitioner lived with her at the time of the incident and that he was wearing baggy pants and an oversized shirt on the day of the incident. Ms. Sawyer said that she spoke with the victim's uncle, Lacory Bobo, after the incident. Mr. Bobo told her that on the day of the incident, he had been at the victim's house all day, and he did not believe that Petitioner had sexually abused the victim. Mr. Bobo said the victim told him Petitioner had an erection, but Mr. Bobo did not believe her. Ms. Sawyer relayed the information from Mr. Bobo to Petitioner's trial counsel. Ms. Sawyer admitted that she did not have personal knowledge that Petitioner had an erection or had abused the victim.

Petitioner's trial counsel testified at the post-conviction hearing. Petitioner was not present during trial counsel's testimony either because the Department of Correction did not receive the transfer order or did not comply with the transfer order issued by the trial court. The trial court cited several reasons for allowing trial counsel to testify without Petitioner present. Specifically, the court noted that trial counsel had traveled from Union City to be present for the hearing, the matter had been pending for over a year, and the court did not know of any right to confrontation in post-conviction proceedings. The court further stated that trial counsel would be called back to court if something developed and it was necessary for him to be present later.

Trial counsel testified that three days prior to trial the State enlarged the time period covered by the indictment for the offense of aggravated sexual battery to cover a period of activity from 1995 to 1999 rather than 1998 to 1999. The district attorney told him that the State was going to elect to submit to the jury the offense which occurred on October 22, 1999, but he noted that this still created a problem for the defense. Relying on *State v. Rickman*, 876 S.W.2d 824, 825-28 (Tenn. 1994), trial counsel explained that with an "open date indictment," he knew that although the State was electing to convict on only one offense, the jury would be allowed to hear evidence of other sexual conduct Petitioner allegedly committed against the victim during that time period.

After receiving the expanded indictment, trial counsel said that he and Petitioner discussed at length whether to request a continuance in order to postpone the trial. They also discussed the State's plea offer. Petitioner was fully aware that the other instances of conduct would be harmful to his case, but persisted with his innocence and wanted to proceed to trial as scheduled. He refused to accept the State's plea offer. According to trial counsel, Petitioner never expressed any interest in wanting to postpone the trial date. Trial counsel did not see any need for seeking a continuance because he did not feel that more time would allow him to better prepare for trial. He said that there was no need for further investigation because the State informed trial counsel as to exactly what the victim's testimony about the prior acts would be, and the only available defense was Petitioner's contention that the prior acts never occurred. Additionally, trial counsel thought that if Petitioner was found guilty, he would be able to argue that Petitioner could not be sentenced as a multiple

offender because the State had failed to re-file its intent to seek an enhanced sentenced based on his prior convictions.

Trial counsel said that he properly cross-examined the victim and attempted to impeach her testimony by inquiring about prior instances in which the victim made false allegations of sexual abuse. Trial counsel said that once the victim denied knowledge of these false allegations, the rules of evidence precluded him from asking further questions or introducing extraneous impeachment evidence. In any event, trial counsel said that the only evidence he possessed concerning these prior false allegations was Petitioner's own contention that these other false claims had been made.

With respect to the victim's testimony that Petitioner had touched her on three prior occasions, trial counsel said that he "didn't touch" the statements. He did not want to cross-examine the victim regarding the incidents, because he did not want the jury to focus on the other incidents as "major factors" indicating guilt in the charged offense. Trial counsel admitted that his decision not to object to the prosecutor's use of the prior acts during closing argument may have been prejudicial to Petitioner. Nevertheless, he maintained that the decision not to object was made in an effort to avoid emphasizing the already damaging evidence.

Trial counsel said he cross-examined the babysitter, Ms. Pullen,"very thoroughly." He said that Ms. Pullen's direct testimony was convoluted and her story changed multiple times. He recalled that the trial judge had to "scold" him because he openly accused Ms. Pullen of lying in court. He said that he re-read Ms. Pullen's testimony prior to the post-conviction hearing because he "just couldn't believe that [Petitioner] said [he] didn't drill her because [he] drilled her every way [he] could turn her." After re-reading her testimony, trial counsel said he remained satisfied that he had adequately cross-examined Ms. Pullen. He said that her testimony was essentially that she was present in the home during the abuse, and was aware the abuse was occurring, but did nothing to intervene or prevent the abuse from happening. He said she was not a credible witness on the stand and he had made every effort to highlight her shortcomings.

Trial counsel said that Petitioner's clothing was not a significant issue at the time of trial. Trial counsel was not aware that Ms. Pullen had seen Petitioner with an erection during the incident until she testified to the fact at trial. Trial counsel said that prior to trial, Petitioner never mentioned that various witnesses could attest that an erection was not visible through the clothing he was wearing on the day of the incident. According to trial counsel, Petitioner had suggested the individuals as possible character witnesses, but never for the purpose of testifying about Petitioner's clothing. Trial counsel did not want to provide testimony about Petitioner's character because, pursuant to the trial court's ruling on a motion in limine, evidence of Petitioner's prior acts would not be admitted unless the defense attempted to introduce evidence of Petitioner's character. Those prior acts included similar allegations of child sexual abuse in Arkansas, and several allegations of the same type of abuse in Memphis, including an indictment for rape of a child which was pending at the same time as the present case. Trial counsel also found it important that these "key witnesses" were not present at the scene and could not testify about the incident.

Trial counsel admitted that he did not ask the trial court to instruct the jury regarding the lesser included offense of criminal attempt to commit aggravated sexual battery. He said that he "overlooked" the instruction and it was a "mistake." He said that in hindsight the error was insignificant because the jury would not have reached the charge of criminal attempt to commit aggravated sexual battery since it convicted on the charged offense which ended the inquiry.

Trial counsel did not request a bill of particulars following the second indictment because he knew the State was going to elect to charge on the same October 22, 1999 offense from the original indictment. The State had given trial counsel the specifics regarding the three prior acts newly alleged in the superceding indictment. As such, a bill of particulars was not necessary because he had all of the information for each of the offenses alleged. Trial counsel said that with respect to all other information, the State was cooperative and promptly provided him with any information he requested, as well as all *Jencks* material and anything else on file.

Trial counsel could not recall whether the trial court had applied the particularly vulnerable enhancement factor to Petitioner's sentence. Trial counsel said that the facts of the case supported application of the enhancement factor that the offense was committed to gratify Petitioner's desire for pleasure or excitement as well as the enhancement factor that Petitioner abused a position of public or private trust. For this reason, he did not object to the trial court's application of these factors for sentence enhancement purposes.

At a subsequent hearing, Petitioner testified regarding the allegations in his petition. He first argued that trial counsel was ineffective for failing to object to the new indictment and failing to request a continuance once the new indictment was issued. Petitioner testified that he was not in the courtroom when he was re-indicted on the three touching incidents prior to October 22, 1999. After being re-indicted, Petitioner said that he agreed to forego a continuance and proceed to trial because trial counsel advised him that a continuance would be a waste of time and would not change anything. Petitioner said he wanted to postpone the trial because trial counsel had not requested a bill of particulars for the new indictment and had not spoken with the State nor interviewed the victim or her mother regarding the prior incidents. Petitioner said that he was prejudiced by trial counsel's failure to request a bill of particulars because the defense could not adequately defend against the new indictment without the factual information underlying the allegations. He said trial counsel wanted to proceed quickly to trial on the scheduled date before the State recognized it had failed to re-file notice of Petitioner's prior record for enhancement purposes.

Petitioner and trial counsel discussed the potential range of punishment should he proceed to trial. Petitioner was aware the State had offered a plea agreement of six years at thirty percent. He said he considered taking the State's plea offer because he was "scared," but trial counsel expressed confidence in winning at trial, so Petitioner decided to forego the plea agreement. Petitioner then said that trial counsel should have objected to the State's use of the enhancement factor that the victim was of a particularly vulnerable age because the State did not offer proof of vulnerability sufficient to support application of the enhancement factor.

Petitioner said that trial counsel failed to adequately investigate his case and as a result failed to properly cross-examine witnesses. According to Petitioner, trial counsel was deficient in cross-examination of Felicia Pullen, N.C., the victim, the victim's mother, and Nurse Speck. He said that trial counsel never requested any *Jencks* material from the State. Thus, trial counsel was not aware that the witnesses' statements to the police were inconsistent with their testimony at trial. Consequently, trial counsel could not use the witnesses' prior statements to impeach their trial testimony. Petitioner said that trial counsel also failed to expose the animosity between Petitioner and Ms. Pullen which gave Ms. Pullen motive to lie and make false accusations against Petitioner.

Petitioner said that trial counsel also failed to cross-examine the victim's sister and mother regarding false allegations of sexual abuse previously made by the victim. He said that trial counsel should have cross-examined the victim's mother about her second job. Petitioner also complained that trial counsel should have cross-examined the victim's mother or Lacrisha West about the victim having been constipated on the Sunday prior to the incident.

Petitioner said that trial counsel should have objected to any testimony from the victim regarding incidents of sexual abuse prior to the date of the charged offense. He said that trial counsel should have objected during the State's closing argument when the prosecutor made reference to statements by the victim that were not part of the trial record. Petitioner also stated counsel should have objected to the State's failure to elect a charging offense.

Petitioner next testified that trial counsel failed to call certain "key witnesses" at trial. Specifically, Petitioner said that Ms. Larita Sanders, Mr. Larry Steagal, and Mary Anne Sawyer should have been called to testify that he was wearing baggy pants and a baggy shirt on the day of the incident. Petitioner said that Ms. Sanders could also have testified that N.C. told her and Petitioner that the babysitter and the victim's mother instructed the victim to say that Petitioner had touched her. Mr. Steagal would have testified that Petitioner had concerns about Ms. Pullen and the care she was providing for the children. Petitioner said that Ms. Whitelock, one of the victim's teachers, could have been called to testify that he had a problem with the way Ms. Pullen clothed the victim.

Petitioner said that had Lacrisha West been called to testify, she would have stated that the victim was experiencing bowel trouble at church on the Sunday preceding the incident. Lacrisha West could also have testified that the victim said Petitioner did not touch her. Petitioner said that Pastor West, Lacrisha West's father, would have testified that the victim's mother told him she never had problems with Petitioner prior to the incident. He said that if called, Ms. Katherine Hemphill would have testified that false allegations of sexual abuse had previously been made against Petitioner. Petitioner said that trial counsel should have called Lacory Bobo to testify about prior disagreements between Petitioner and Ms. Pullen. Mr. Bobo could also have testified that the victim had previously made false allegations of sexual abuse against other men.

Petitioner next testified that trial counsel failed to properly object to hearsay testimony during the trial. Specifically, he said that Ms. Pullen testified regarding a conversation that took place

between Gus and the victim in which the victim said that Petitioner had touched her. He said that Ms. Pullen also improperly testified regarding statements the victim's brother made to her about his observations during the incident. Petitioner said that trial counsel should have objected to Nurse Speck's hearsay testimony regarding the victim's medical examination since Ms. Pinson, not Nurse Speck, actually conducted the examination.

Petitioner next testified that trial counsel was ineffective in failing to request an instruction on the lesser included offense of criminal attempt to commit aggravated sexual battery.

Ms. Bobo, the victim's mother, testified that the victim had never falsely accused anyone of sexually abusing her. Ms. Bobo never told Petitioner that the victim made prior false claims. Ms. Bobo said the victim never told her that the allegations against Petitioner were false. Ms. Bobo denied telling Petitioner that the allegations the victim made against him were false. She also denied telling trial counsel or any of her family members that the victim's allegations were false. On cross-examination, Ms. Bobo said neither of her daughters had ever made allegations of sexual abuse prior to the October 22, 1999, incident. Ms. Bobo said that she never had a conversation with Petitioner about improper touching or about reports by the children of improper touching. She also denied giving Ms. Pullen an instruction to "keep an eye" on Petitioner when he was around the children.

At the conclusion of all the proof, the post-conviction court dismissed his petition, finding that Petitioner had failed to demonstrate prejudice with respect to his claims.

## III. Analysis

### A. Standard of Review

Petitioner argues that trial counsel was ineffective for failing to adequately investigate and call witnesses at trial; failing to request a continuance in light of the new indictment; failing to make proper objections at trial; failing to request that the jury be instructed on the lesser included offense of criminal attempt to commit aggravated sexual battery; and failing to make proper objections at the sentencing hearing.

To succeed on a challenge of ineffective assistance of counsel, the petitioner bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2003). The petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the petitioner must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State,* 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependent upon a showing that the

decisions were made after adequate preparation. *Cooper v. State,* 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Strickland,* 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns,* 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068). The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id.* at 461. "[A] trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State,* 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State,* 960 S.W.2d 572, 578 (Tenn. 1997)). However, conclusions of law are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id.*

### B. Failure to adequately investigate and call witnesses at trial

Petitioner first contends that trial counsel was ineffective because he failed to adequately investigate his case by failing to call witnesses and failing to determine all possible avenues of defense. He contends that he provided trial counsel with the names of ten witnesses who could provide testimony relevant to his defense, but trial counsel "failed to contact most witnesses and failed to call all of the witnesses." Petitioner argues that in failing to contact these witnesses, trial counsel overlooked crucial avenues for attacking the credibility of the State's case.

Specifically, Petitioner asserts that had Lacrisha West been called, she would have testified that she heard the victim say that Petitioner did not commit the offense charged. Lacrisha West reported this information to her mother who could have been called to testify and corroborate her daughter's testimony regarding the victim's statement. Petitioner asserts that Lacrisha West would also have testified that the victim was ill and suffering from diarrhea or constipation on the Sunday prior to the offense. He claims that this information was relevant to explain physical abnormalities observed by the Memphis Sexual Assault Resource Center during the physical examination of the victim.

With respect to whether Petitioner was prejudiced by trial counsel's decision not to call Lacrisha West, the post-conviction court found as follows:

> [Lacrisha] West was called and testified she [overheard] the victim and her brother arguing about the petitioner touching [the] victim and that she heard the victim say [Petitioner] didn't do it. The testimony was vague as to when this conversation occurred and even vague as to which incident it may have been referencing.

Although it appears this testimony could have been helpful to the petitioner at trial, this court cannot make that determination based on the proof presented. The burden of proof is on the petitioner to show that this testimony has relevance and could have affected the outcome of the trial. This Court feels that the petitioner has failed to carry that burden as to this witness.

We agree with the trial court. Ms. West was unable to testify with any specificity when the conversation between the victim and her brother took place, what touching they were discussing, when the touching occurred, what body part was touched, or where the touching took place. As such, there is nothing to indicate that the conversation in which the victim stated that Petitioner did not touch her pertained to the charged offense which occurred on October 22, 1999. Ms. West likewise could not identify a specific date that the victim was sick with diarrhea. She could only recall that it was "one Sunday" at church. Without a specific time frame, there is no link between the day Ms. West recalled the victim being sick and the date of the incident. Thus, the testimony is not helpful as an alternative explanation for the physical symptoms exhibited by the victim. Petitioner has failed to meet his burden of demonstrating that he was prejudiced by trial counsel's decision not to call Ms. West as a witness.

Petitioner next contends that several witnesses including Larita Sanders, Larry Steagall, and Mary Anne Sawyer, should have been called to testify that Petitioner was wearing baggy clothing on the day of the incident. He argues that this testimony was relevant to rebut the State's evidence that Petitioner had a visible erection when exiting the victim's room on the day of the incident. Specifically, he argues that due to his baggy clothing it was impossible for either the victim's sister or Ms. Pullen to see an erection when he exited the victim's room.

The post-conviction court found that although the testimony from these witnesses "may have been somewhat helpful in refuting the testimony of the [babysitter] that she observed an erection, . . . it would still be a question for the jury to determine whether an erection could be seen through baggy clothing." In our view, trial counsel's decision not to call these witnesses was the result of sound and reasonable trial strategy. Both trial counsel and Petitioner testified that none of these witnesses were present at the scene when Petitioner exited the victim's room. Only N.C. and Ms. Pullen saw Petitioner leave the victim's room and exit the home. As such, only N.C. and Ms. Pullen could testify as to whether they observed an erection through the clothing Petitioner was wearing at that time. Trial counsel stated that this was a significant factor in his decision not to call the witnesses. Additionally, trial counsel said that prior to trial Petitioner suggested the witnesses as possible character witnesses, but never mentioned the witnesses in the context of his attire. Trial counsel explained that he was wary of calling these individuals as character witnesses because he was afraid such testimony would open the door for evidence of Petitioner's past acts of sexual abuse, including a conviction and a child rape charge pending at the time of trial. Trial counsel said that per his agreement with the State, no evidence of Petitioner's prior acts would be introduced unless Petitioner sought to introduce evidence of his own good character. Trial counsel said the issue at trial was whether Petitioner had touched the victim on the day in question and his attire at the time of the incident was not dispositive of that issue, nor was it worth the risk that his prior acts would

be introduced. This Court will not second-guess such a strategic decision. We conclude that Petitioner has not shown that he was prejudiced by trial counsel's decision not to call the aforementioned witnesses at trial. He is not entitled to relief on this issue.

Finally, Petitioner contends that trial counsel was ineffective because he was "unaware and unprepared" for the victim's testimony concerning the prior alleged instances of improper touching which occurred prior to the date of the charged offense. He contends that trial counsel did not request that the State provide information concerning the prior incidents of sexual abuse. As such, he argues that trial counsel was unprepared for cross-examination and asked no questions challenging the three prior instances of improper touching. Petitioner argues that the "inability to defend against these new allegations allowed the state to make a propensity argument during closing arguments."

Presumably, Petitioner is referring to trial counsel's decision not to request a bill of particulars after the superceding indictment was issued. The post-conviction court found "counsel testified that he chose to attempt to minimize the priors and concentrate on the indicted offense and that the specifics of the prior would not have helped him." The court further found that "Petitioner offered no proof in this hearing that had trial counsel received a more particular description of the prior incidents it would have changed trial strategy or affected the outcome of the trial."

We see nothing in the record which preponderates against the trial court's findings. Trial counsel testified that he did not file for a bill of particulars following the new indictment because he knew the State was going to elect to charge on the same October 22, 1999 offense alleged in the original indictment. Trial counsel further testified that the State had given him the available details regarding the three prior incidents of sexual abuse. Because the victim was so young she was unable to provide extensive detail. Thus, trial counsel felt that it was unnecessary to request a bill of particulars following issuance of the superceding indictment. Trial counsel said that he chose not to cross-examine the victim about the prior incidents because he felt that it was in his client's best interest not to focus more attention than necessary on the prior acts. We conclude that it was a reasonable, strategic decision on the part of trial counsel to direct attention away from the prior incidents, one which we will not second-guess. Moreover, Petitioner has failed to present evidence demonstrating that he was prejudiced by trial counsel's choice not to request a bill of particulars. Accordingly, Petitioner is not entitled to relief on this issue.

### C. Failure to request continuance in light of new indictment

Petitioner next argues that trial counsel was ineffective for failing to request a continuance in light of the new indictment issued three days prior to trial. He contends that trial counsel "failed to adequately advise him concerning the repercussions of not demanding a continuance due to the new indictment." He also contends that trial counsel was ineffective in failing to adequately prepare to defend against the new evidence of prior offenses. He argues that by encouraging Petitioner to proceed to trial and forego a continuance, trial counsel failed to appreciate the impact that this evidence would have on Petitioner's defense.

The record reflects that the indictment was enlarged to expand the time period in which the offense took place. The initial indictment alleged offense dates from October 22, 1998 to October 24, 1999. The superceding indictment enlarged that time period to include from March 11, 1995 until October 24, 1999. Trial counsel testified that he was informed of the superceding indictment three days prior to trial. He said that he was aware that pursuant to *State v. Rickman*, 876 S.W.2d 824, 829 (Tenn. 1994), the enlarged indictment would permit the State to present evidence of other instances of sexual abuse. Trial counsel was aware of no valid, legal objection to the State's introduction of the prior instances of sexual abuse. He testified that he discussed the superceding indictment with the State. The State informed him that although evidence of other sexual conduct would be introduced, the State intended to charge on the October 22, 1999 offense just as in the original indictment.

Trial counsel testified that he informed Petitioner of the new indictment and advised him that given the last minute nature of the indictment, he had the option to file for a continuance rather than proceed to trial. Petitioner admitted on cross-examination that it was ultimately his decision to proceed to trial on the scheduled date. Trial counsel testified that any encouragement from him to immediately proceed to trial hinged on trial strategy and an effort to get Petitioner a lesser sentence if convicted. Trial counsel said he felt he had a procedural strategy that would benefit Petitioner by lessening his sentence in the event he was convicted. Specifically, the State failed to file a new Range II enhancement notice with the new indictment, and trial counsel thought that as a result, Petitioner could only receive a Range I sentence if convicted. There was a concern that a continuance would give the State time to realize its oversight and file the notice.

Trial counsel explained that in light of the evidence, additional time was not necessary to adequately defend against the new allegations. He testified that he felt like he had a strong case with respect to the charged offense because the physical evidence yielded no trace of Petitioner's semen on the victim or her clothes. The post-conviction court found that "[a] review of the law by this court finds that trial counsel's position on the proof of other incidents was sound and that his only option was to move for a continuance. . . . No proof was presented to show that if the matter had been continued the proof on either side would have been any different." The court then concluded that Petitioner failed to present evidence at the post-conviction hearing that a continuance would have changed the outcome of his trial or that trial counsel's actions were anything other than trial strategy. We find nothing in the record which preponderates against the post-conviction court's findings. Thus, Petitioner is not entitled to relief on this issue.

### D. Failure to object to prior bad acts

Petitioner next contends that trial counsel was ineffective in failing to object to the admission into evidence of instances of sexual abuse perpetrated by Petitioner on the victim prior to the date of the charged offense. Petitioner asserts that both trial counsel and the State mistakenly relied on *Rickman*, believing that Petitioner was precluded from objecting to admission of the prior unlawful touchings. Petitioner argues that under *Rickman*, where the indictment charges that sex crimes occurred over a span of time, evidence of unlawful sexual contact between the defendant and the

-13-

victim allegedly occurring during the time charged in the indictment is admissible provided the State elects the offense it is going to convict on at the close of its proof-in-chief. *Rickman*, 876 S.W.2d at 828-29. He argues that the election must be specific to the offense and not the particular date upon which the offense was committed. He points out that this Court has previously held that "separate instances of unlawful sexual contact committed by the same defendant against the same victim on the same day and within a twenty minute time span were actually two separate occasions; thereby, requiring the state to make an election of offenses." *State v. Scales*, M2000-03150-CCA-R3-CD, 2002 WL 29475, *6 (Tenn. Crim. App., at Nashville, Jan. 11, 2002), *perm. app. denied* (Tenn. July 15, 2002). According to Petitioner, "[f]ailure to make an election of offenses in such a case warrants reversal of the conviction in order to protect the accused's right under the Tennessee Constitution to a unanimous verdict."

Petitioner contends that in the present case, the proof at trial suggested that on the afternoon of October 22, 1999, Petitioner unlawfully touched the victim several times with each touch constituting a separate offense. He argues that although the State elected the date of October 22, 1999 as the date of the convicting offense, it failed to elect the specific offense committed on that date for which it was seeking a conviction. He contends that the victim's testimony suggested that one touching occurred when Petitioner "went into her bedroom to help her put her shoes up, sat on the floor, took out his "nut-nut," and touched her on the front and back. Petitioner contends that on cross-examination, the victim identified a second incident, suggesting that Petitioner "touched her by the bunk bed, while they were both standing up." The third touching occurred "as [the victim] passed by the door and was looking in." According to Petitioner, the victim suggested another touching occurred when Petitioner "came over to her and told her to stand up and touched her over her clothing on her pocketbook and behind."

Petitioner argues that each touch constituted a separate act rather than one continuous activity because the victim was entering and exiting the bedroom between the touches. He asserts that the testimony from the victim's sister and Ms. Pullen supports his contentions. Because each touch amounted to a separate offense, Petitioner argues that the State failed to meet the requirements of electing an offense under *Rickman*. He contends that trial counsel was ineffective in failing to recognize the State's error and failing to object to admission of the other acts. In any event, he argues that even absent a request from trial counsel, it was the responsibility of the trial court to ensure that the State properly elected an offense, and the trial court failed in this regard. He argues that a reversal is warranted because without a proper election his conviction is based on a "patchwork verdict" with each juror convicting on different offenses in evidence.

As correctly noted by Petitioner, the Tennessee Supreme Court held in *Rickman*, that evidence of other sex crimes is admissible when an indictment is not time specific and when the evidence relates to sex crimes that allegedly occurred during the time as charged in the indictment. *Rickman*, 876 S.W.2d at 829. In such cases, the state must, at the close of its proof, elect the single offense for which a conviction is sought. *Id*. In reaching this decision, our supreme court reiterated that there is no general "sex crime" exception to the general rule against admitting evidence of other crimes. *See State v. Burchfield*, 664 S.W.2d 284, 287 (Tenn. 1984). However, the court recognized

that, as a limited exception, the State should be allowed some latitude in the prosecution of criminal acts committed against young children who are frequently unable to identify a specific date on which a particular offense was committed. *Rickman*, 876 S.W.2d at 828.

In the case *sub judice*, the indictment was enlarged to include the time period between March 11, 1995 and October 24, 1999. Both the prior instances of touching and the charged offense occurred within the specified time period set forth in the indictment. Our review of the record reveals that only one instance of touching occurred on October 22, 1999. That touching occurred in the victim's bedroom when Petitioner fondled the victim's vaginal region with his hands while her pants were partially down. Trial counsel testified that the State informed him prior to trial that the charged offense would be for the abuse which occurred on October 22, 1999. The record reflects that at the close of the State's proof the judge discussed with trial counsel and the State what the charged offense would be and there was no objection from trial counsel. Additionally, the State informed the jury during closing argument that it was seeking a conviction only for the offense which occurred on October 22, 1999, wherein Petitioner touched the victim in the vaginal area with his hands. Trial counsel said that the testimony from the varying witnesses consisted of individual accounts of the same October 22nd touching and not descriptions of multiple incidents of touching as argued by Petitioner. The post-conviction court found "no valid objection could have been made [to admission of the prior acts], nor was one offered at this hearing." We agree with the trial court and find that the State properly elected a charging offense. Accordingly, having met the requirements or *Rickman*, we conclude that the prior instances of touching were properly admitted into evidence. Petitioner has not demonstrated that he was prejudiced by trial counsel's failure to object to introduction of the prior offenses. Petitioner is not entitled to relief on this issue.

### E. Failure to object to prejudicial hearsay evidence presented during the trial

Petitioner next contends that trial counsel was ineffective in allowing the State's witnesses "to testify to inadmissible prejudicial hearsay." Specifically, he asserts that trial counsel failed to raise a hearsay objection to testimony from the victim that her brother told her she had something white on her pants; he failed to object to N.C.'s testimony that she heard the victim tell Petitioner to "quit" when he pulled on her arm; he failed to object when Ms. Pullen testified that the victim's brother said he saw the victim playing with Petitioner's "privacy;" and finally, trial counsel failed to object when Ms. Pullen testified that the victim told her that Petitioner made the victim touch his "thing." Petitioner argues that the testimony of these witnesses offered the only corroboration of the victim's testimony. Petitioner contends that without this "hearsay testimony" the victim's statements would stand alone and the outcome of the trial would have been different. He also argues that the case should be remanded for further findings of fact because the trial court failed to explicitly state on the record its reasons for denying relief on this issue.

Initially, we note that although the post-conviction court's order denying the petition contains findings of fact and conclusions of law, there are no findings pertaining to Petitioner's hearsay claims. Following a post-conviction hearing, a post-conviction court is required to enter written findings of fact and conclusions of law addressing all grounds for relief. *See* T.C.A. § 40-30-111(b)

(2003); Tenn. R. S. Ct. 28, § 9(A). However, because the substance of the witnesses' testimony was undisputed, it is not necessary for us to reverse the judgment in order that the post-conviction court may make findings of fact with respect to this issue. *See Webb v. State*, 475 S.W.2d 228, 236 (Tenn. Crim. App. 1971). Furthermore, the post-conviction court's failure to enter findings of fact or conclusions of law was harmless error because Petitioner has failed to show that he is entitled to post-conviction relief on this issue. *See Ralph Dewayne Moore v. State*, No. E2005-01007-CCA-R3-PC, 2005 WL 3076833, at *3 (Tenn. Crim. App., at Knoxville, Sept. 27, 2005), *perm app. denied* (Tenn. May 30, 2006).

Prior to her statements regarding what her brother told her, the victim testified from her own knowledge about the white substance on her pants. She twice stated that after Petitioner touched her she had something white on her pants that "looked like milk but . . . wasn't milk." Petitioner raises no issue regarding these earlier statements and none is apparent from the record. We see no prejudice resulting from the victim's testimony about what her brother told her since evidence of the white substance was otherwise admitted. Additionally, trial counsel was not questioned at the post-conviction hearing regarding his decision not to object to the victim's statements or those of N.C. and Ms. Pullen. Even were we to find that trial counsel's performance was deficient, Petitioner has failed to demonstrate how the outcome of his trial would have been different had counsel objected to the cited testimony.

Petitioner also raises a hearsay complaint with respect to the testimony of Nurse Speck. He contends that trial counsel should have raised a hearsay objection to Nurse Speck's testimony regarding the forensic examination report because Nurse Speck did not participate in the examination. He contends that the report of the examination conducted by Nurse Pinson was arguably testimonial evidence and as such, Nurse Speck should not have been allowed to testify regarding the report absent a showing that Nurse Pinson was unavailable. Petitioner cites *State v. Henderson*, 554 S.W.2d 117 (Tenn. 1977) in support of his argument.

In *State v. Henderson*, laboratory assistants at the state toxicology lab were unavailable to testify regarding the results of tests they conducted to determine the nature of substances the defendant sold to undercover officers. *Id*. The test results were introduced into evidence as an exhibit to the testimony of the director of the state toxicology lab who testified in place of the assistants. The test results constituted the only evidence that the substances were contraband. *Id*. The defendant objected and our supreme court ultimately held that "in the face of an objection by the person charged, the State cannot prove an essential element of a criminal offense by test results introduced through a witness other than the one who conducted the test." *Id*. at 122. In the court's opinion, to hold otherwise would violate the defendant's right to confront his accusers. *Id*. The holding in this case dealt with situations involving toxicology examinations and was later, as noted in *State v. Hughes*, 713 S.W.2d 58, 62 (Tenn. 1986), superceded by Tennessee Code Annotated section 55-10-410. That statute addresses the procurement of a sample of a person's blood for the purpose of conducting a test to determine the alcohol content, drug content, or both. As such, Petitioner's reliance on *Henderson* is misplaced.

-16-

At present, defendants' rights under the confrontation clause are governed by the United States Supreme Court decision *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), which establishes when testimonial evidence is admissible in light of the confrontation clause, and *State v. Maclin*, 183 S.W.3d 335 (Tenn. 2006), the Tennessee Supreme Court decision which interprets *Crawford* as applicable in Tennessee courts. However, at the time of Petitioner's trial, a Confrontation Clause issue was governed by *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). Thus, the Confrontation Clause issue raised by Petitioner must be determined under the standard set forth in that case.

Under *Ohio v. Roberts*, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause requires a showing that he or she is unavailable. Once it is established that the declarant is unavailable, the out-of-court statement is admissible only if it (1) falls within a firmly rooted exception to the hearsay rule or (2) contains such particularized guarantees of trustworthiness that adversarial testing of the statement through cross-examination would add little to the assessment of whether the evidence is reliable.

In the case herein, the out-of-court declarant is Nurse Pinson, and her statement is the report of the forensic examination. The State contends that Nurse Speck's testimony with respect to the report was properly admitted under the business records exception to the hearsay rule. *See* Tenn. R. Evid. 803(6). Tennessee Rule of Evidence 803(6) sets forth what constitutes a business record as follows:

> Records of Regularly Conducted Activity.-A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used on this paragraph includes every kind of business, institution, association, profession, occupation, and calling, whether or not conducted for profit.

This Court has previously held that a forensic nurse examiner was a "custodian or other qualified witness," for purposes of admitting reports from the sexual assault resource center as a business record in a trial for aggravated rape, where the examining nurse was unavailable to testify and where the forensic examiner's duties and training involved knowledge as to how reports of the victim's forensic examination are prepared. *State v. Dean*, 76 S.W.3d 352, 364-65 (Tenn. Crim. App. 2001). In concluding that the witness was qualified to testify, this court noted the following regarding who is qualified to authenticate a business record:

> Rule 803(6) simply provides that the witness be the records "custodian or other qualified witness." Typically that witness will be in charge of maintaining records

of the particular business, but other employees or officers or appropriately informed witnesses could be used as well. The key is that the witness have knowledge of the method of preparing and preserving the records. If no witness is available to testify, the records cannot be authenticated as business records, unless the parties stipulate to authentication.

*Id.* (quoting Neil P. Cohen et al., *Tennessee Law of Evidence*, § 8.11[11] (4th ed. 2000)).

Nurse Speck testified that Nurse Pinson was unable to testify at trial because she was in Paris, France. Nurse Speck further testified that at the time of trial she worked as the nurse coordinator at the Memphis Sexual Assault Resource Center and had served in that capacity since 1988. Nurse Speck was tendered and accepted by the trial court as a custodian of records for the center. She was also tendered and accepted as an expert in the field of forensic nursing. Nurse Speck then testified that the report of the victim's examination was made in the course of completing a forensic evaluation of the victim. She said that such a report was made with every patient that presents at the center, and that the center was under a business duty to keep the records on file. Nurse Speck explained the results of the examination as reflected in the report, including the medical procedure used in examining the victim and the process for analyzing the results of the examination.

We agree with the State and conclude the forensic examination report was properly admitted under the business records exception to the hearsay rule. Nurse Pinson's testimony established that MSARC records were made in the regular course of the center's business, and that she, as a certified nurse practitioner and the keeper of records, was qualified to testify regarding the information contained in the victim's examination report. As such, trial counsel was not deficient in his decision not to object to Nurse Speck's testimony regarding the contents of the report. Regardless, Petitioner does not argue what prejudice he suffered as a result of trial counsel's inaction. Therefore, he has not proven ineffective assistance in relation to this issue. As with Petitioner's other hearsay claims, we see no need to remand this case to the post-conviction court for further findings of fact because the substance of Nurse Speck's testimony is undisputed, and Petitioner has failed to demonstrate that he is entitled to relief.

### F. Failure to object to statements made by the prosecutor during closing argument

Petitioner next argues that trial counsel was ineffective in failing to object to or request a curative instruction regarding improper statements made by the prosecutor during closing argument. Petitioner first contends that trial counsel should have objected to the prosecution's use of the prior instances of touching to mount a propensity argument. He then argues that trial counsel failed to object to the introduction of facts not in evidence. Specifically, the prosecutor stated that Petitioner touched the victim's vagina and buttocks with his hand. Finally, he contends that although trial counsel objected when the prosecutor made statements characterizing trial counsel's opinions and objected when she said that Petitioner "was attempting to engage in trickery," trial counsel failed to request a curative instruction.

At the post-conviction hearing, trial counsel testified that he made a tactical decision not to object to the prosecutor's use of the prior instances of touching during closing argument. He admitted that although the decision not to object may have been a mistake, he felt at the time that the best strategy was to limit the amount of focus directed at the prior incidents. He testified that it was his opinion that drawing attention to the prior incidents by raising an objection during closing argument would be more damaging to Petitioner's case than allowing the prosecutor to mention the prior acts. Once again, trial counsel's decision was a tactical decision which we will not second-guess.

With respect to Petitioner's other claims, our review of the record does not reveal that the prosecutor attempted to introduce evidence during closing argument that was not part of the record. Indeed, the statements that Petitioner now objects to, i.e. that the Petitioner touched the victim's vagina and buttocks with his hand, refer to evidence in the record and, in fact, the exact touching for which Petitioner was convicted. Furthermore, Petitioner has not demonstrated that the outcome of his trial would have been different had counsel objected to the prosecutor's statements. Nor has Petitioner shown how he was prejudiced by counsel's failure to request a curative instruction following the prosecutor's characterization of trial counsel's opinions and her statements that Petitioner "was attempting to engage in trickery." Accordingly, Petitioner is not entitled to relief on this issue.

### G0. Failure to object to proceeding to trial absent arraignment on the second indictment

Petitioner next argues that trial counsel was ineffective when he failed to object to proceeding to trial absent proof of arraignment. He cites Rule 10 of the Tennessee Rules of Criminal Procedure in support of his argument. Rule 10 provides that "[b]efore any person is tried for the commission of an offense, the person shall be called into open court and arraigned, except as provided in Rule 43." Petitioner argues that there is no indication in the record that he was arraigned on the new indictment, nor does he recall having been arraigned on the indictment. At the post-conviction hearing, trial counsel testified that Petitioner was present at every stage of the trial proceedings. Petitioner testified that,"[he] was not even in the courtroom when [he] was re-indicted," and despite trial counsel's testimony to the contrary, "the first time [he] even heard that [he] was re-indicted was that Friday evening when [trial counsel] came to see [him]."

As noted by the State, while there may be no evidence in the record to show that Petitioner was arraigned on the superceding indictment, there is likewise no evidence to show that he was not arraigned. The proof at the post-conviction hearing amounted to Petitioner's word against that of trial counsel. The post-conviction court obviously accredited the testimony of trial counsel over that of Petitioner. There is nothing in the record which preponderates against the post-conviction court's finding that his trial counsel should have objected to proceeding to trial without an arraignment. Petitioner has failed to meet his burden of showing by clear and convincing evidence that he was not arraigned on the superceding indictment. Petitioner is not entitled to relief on this issue.

-19-

**H. Failure to adequately cross-examine State's witnesses**

Petitioner next asserts that trial counsel provided ineffective assistance when he failed to adequately cross-examine the state's witnesses. Specifically, he contends that trial counsel failed to request *Jencks* material and thus failed to impeach any witnesses with their prior inconsistent statements. He argues that the victim made prior inconsistent statements to the police as did the babysitter, Ms. Pullen. He also argues that trial counsel failed to cross-examine the victim's mother as to whether the victim was suffering from diarrhea and constipation prior to her physical examination, and likewise failed to question Ms. Pullen about her motivation to lie about Petitioner's actions. Trial counsel testified that he interviewed the victim prior to trial and had copies of her statement and the statements of the other witnesses. He could not recall anything from the statements that was worthy of use for impeachment purposes. He felt that he had adequately cross-examined the witnesses, sufficiently pointing out the inconsistencies in each of the witnesses's testimony, even going so far as to be admonished by the trial court for his aggressive cross-examination of Ms. Pullen.

After reviewing the record of the trial transcript, the post-conviction court noted that two of the primary witnesses in this case were young, specifically, the victim who was six-years-old at the time of the incident and her sister who was eight-years-old. The court found that "[a]lthough there were inconsistencies in some of the details of their testimony it was consistent with regard to the major issues. . . . [and] the inconsistencies were adequately pointed out on cross-examination." The court then found that the cross-examination of the children, the babysitter, and the nurse practitioner were adequate under the law and any issues with these witnesses' testimony were resolved during direct and cross-examination. In reaching this conclusion, the court noted that no proof was offered at the post-conviction hearing to show that the victim lied during her testimony or recanted her statement that Petitioner had committed the offense charged. In light of its findings, the post-conviction court determined this issue to be without merit. We once again agree with the post-conviction court, concluding that Petitioner has failed to show by clear and convincing evidence that trial counsel rendered deficient representation or that Petitioner was prejudiced by trial counsel's cross-examination of the State's witnesses. Petitioner is not entitled to relief on this issue.

**I. Failure to request jury be instructed on lesser included offenses**

In his next issue, Petitioner argues that trial counsel provided ineffective assistance because he failed to request that the trial court instruct the jury on the lesser included offense of criminal attempt to commit aggravated sexual battery. At the post-conviction hearing, trial counsel testified that he failed to request a charge of criminal attempt to commit aggravated sexual battery, but recalled that other lesser included offenses were charged. Trial counsel opined that the failure to instruct on the lesser included offenses was harmless error. He reasoned that because the jury convicted on the charged offense it would never have considered a charge for criminal attempt. Portions of the trial transcript were made an exhibit at the post-conviction hearing, however, the jury instructions were not transcribed. Thus, the record is void of any additional evidence indicating the

trial court's instructions to the jury. With respect to this issue, the post-conviction court stated its findings as follows:

> Although all crimes include a lesser offense of [c]riminal [a]ttempt, the law does not require that it be charged in all offenses. This court's review of the trial transcript leads the Court to believe that a reasonable jury could not find that this was an attempt. Further, the jury convicted the petitioner as charged with [a]ggravated [s]exual [b]attery; therefore they never would have reached [c]riminal [a]ttempt in this discussion. Any error was harmless.

The facts of the present case are analogous to those in *State v. Marcum*, 109 S.W.3d 300 (Tenn. 2003), a case decided by our supreme court subsequent to Petitioner's trial. In *Marcum*, the victim testified that the defendant forced her to engage in fellatio. *Id.* at 304. The defendant testified that the event never happened and he was never alone with the victim. *Id.* The court found that the evidence supported two interpretations of the events that occurred -that the defendant raped the victim or he did not. *Id.* Citing *Burns*, the court held that there was no evidence of attempt and therefore no instruction on attempt was warranted. *Id.* (citing *Burns*, 6 S.W.3d at 471). In the present case, the victim, a six-year-old child, testified that Petitioner pulled down her pants and touched her in her genital area. Although Petitioner did not testify, his defense was that the touching never occurred. Implicit in the trial court's ruling is the fact that the evidence presented permitted only two interpretations - that Petitioner committed aggravated sexual battery against the victim or he did not. As in *Marcum*, there was no evidence of merely an attempt. Thus, no instruction on attempt was warranted.

Even were we to conclude that an attempt instruction was warranted, Petitioner is still not entitled to relief. At the time of Petitioner's trial, it was "the trial court's duty to charge juries as to the law of each offense included in an indictment . . . whether or not a defendant requested such an instruction." *State v. Wilson*, 92 S.W.3d 391, 394 (Tenn. 2002) (citing T.C.A. § 40-18-110(c) (1997)); *see also State v. Page*, 184 S.W.3d 223, 229 (Tenn. 2006) (holding that "[u]nder this prior version of section 40-18-110, a defendant was not required to request a lesser-included instruction to assign as error the trial court's failure to give such instruction). Based on the trial court's duty to instruct the jury regardless of a request to do so from the defendant, this Court has previously concluded that defense counsel was not ineffective for failing to request an instruction on a particular lesser included offense. *See Chivous Robinson v. State*, No. E2005-010E6-CCA-R3-PC, 2006 WL 1381511, at *6 (Tenn. Crim. App., at Knoxville, May 19, 2006), *perm. app. denied* (Tenn. Oct. 2, 2006); *Jeffery Lee Miller v. State*, No. M2003-02841-CCA-R3-PC, 2005 WL 901130, at *5 (Tenn. Crim. App., at Knoxville, Apr. 19, 2005), *perm. app. denied* (Tenn. Oct. 17, 2005); *Terrance L. Turner v. State*, No. M2002-02429-CCA-R3-PC,2004 WL 587636, at *5 (Tenn. Crim. App., at Nashville, Mar. 25, 2004), *perm. app. denied* (Tenn. Aug. 30, 2004). Accordingly, in the case *sub judice*, trial counsel was not ineffective for failing to request an instruction on the lesser included offense of criminal attempt to commit aggravated sexual battery because, at the time of Petitioner's trial, this obligation was statutorily imposed on the trial court and not the defense attorney. Petitioner did not argue in his brief or at the post-conviction hearing that trial counsel was ineffective

in failing to raise the lesser included issue on appeal. *See Chivous Robinson*, 2006 WL 1381511, at *6. Thus, Petitioner is not entitled to relief on this issue.

Although unnecessary for the disposition of this appeal, in light of the statements of trial counsel and the findings of the post-conviction court, we find it necessary to further address this issue in light of the ruling of our supreme court in *State v. Williams*, 977 S.W.2d 101, 106-08 (Tenn. 1998).

In *Williams*, the defendant was charged and convicted of premeditated first degree murder. *Id*. at 104. The trial court instructed the jury on premeditated first degree murder, second degree murder and reckless homicide, but refused a defense request to instruct the jury on voluntary manslaughter. *Id*. A panel of this court reversed the conviction and remanded the case for a new trial because the trial court refused to instruct the jury as to the offense of voluntary manslaughter. On appeal, the supreme court acknowledged that the trial court erred in refusing to charge the jury on voluntary manslaughter. However, the court held that the error was harmless beyond a reasonable doubt "because the jury's verdict of guilt on the greater offense of first degree murder and its disinclination to consider the lesser included offense of second degree murder clearly demonstrates that it certainly would not have returned a verdict on voluntary manslaughter." *Id*. at 106-08; *Id*.; *see State v. Boyd*, 797 S.W.2d 589, 593 (Tenn. 1990) (Any possible error in failing to instruct voluntary and involuntary manslaughter, when second degree murder was charged and the defendant was convicted of first degree felony murder, was "completely harmless."); *State v. Blanton*, 926 S.W.2d 953 (Tenn. Crim. App. 1996); *State v. Newsome*, 744 S.W.2d 911 (Tenn. Crim. App. 1987); *State v. Atkins*, 681 S.W.2d 571 (Tenn. Crim. App. 1984). In other words, where the trial court instructs on a lesser included offense which is intermediate and serves as a "buffer" between the greater offense and the second lesser included offense for which the defendant was refused instruction, and the jury convicts on the greater offense, the failure to instruct on the requested lesser included offense is harmless. Applying this reasoning to the present case, the statements of trial counsel and the post-conviction court are accurate only if the jury convicted on the charged offense to the exclusion of a lesser offense which served as a "buffer" between the convicted offense and the offense of criminal attempt to commit aggravated sexual battery.

### J. Failure to object to improper enhancement factors

Petitioner next contends that trial counsel failed to object to the application of certain enhancement factors during the sentencing phase of his trial. Specifically, Petitioner complains that trial counsel did not object to the application of the following enhancement factors: (1) that the victim was particularly vulnerable because of her age; (2) that the offense was committed to gratify Petitioner's desire for pleasure; and (3) that Petitioner violated a position of private trust. In raising this issue both in his petition and at the post-conviction hearing, Petitioner's complaint concerned only application of the enhancement factor that the victim was particularly vulnerable due to her age. Thus, Petitioner's remaining claims are waived because, as previously stated, an issue may not be

raised for the first time on appeal.  We will address only Petitioner's argument regarding the particular vulnerability of the victim.  Citing *State v. Adams*, 864 S.W.2d 31, 35 (Tenn. 1993), Petitioner argues that the trial court erred in applying this factor because age was an element of the offense and therefore could not be considered as an enhancement factor without additional findings of vulnerability.  He contends that he was prejudiced by trial counsel's failure to object to application of this factor because that failure resulted in his receiving an enhanced sentence.

At the sentencing hearing, the State cited the following enhancement factors as applicable to Petitioner's sentence: Petitioner's criminal history (four prior convictions for aggravated sexual battery), the victim's vulnerability, the crime was committed to gratify Petitioner's desire for pleasure, and Petitioner abused a position of public or private trust.  The State then recommended a sentence of twenty years as a Range II offender, citing "the number of past victims and the nature of this crime" in support of the sentence.  In imposing Petitioner's sentence of eighteen years, the trial court stated that it was relying on all of the enhancement factors cited by the State.  In rendering its findings however, the court stated only that "[t]he court has considered the fact that [Petitioner] has other offenses - - similar offenses in the past as pending offenses.  And the court feels that is a proper sentence based on his history and the circumstances in this case that's set out in the enhancement and the one mitigating factor submitted to the court."

At the post-conviction hearing, trial counsel testified that he did not object to application of the enhancement factors because he felt all were applicable to Petitioner's sentence.  The post-conviction court found that the trial court "put a great deal of emphasis on the enhancement factor based upon prior [c]onviction and [c]riminal behavior."  The post-conviction court stated that "[t]here is nothing in the transcript to indicate that the trial Judge put much weight on anything but the prior record of the petitioner."  The post-conviction court then noted that the trial court had not sentenced Petitioner to the maximum sentence based on his prior convictions, and that the sentence imposed was proper given the nature of Petitioner's prior convictions and their similarity to the offense in the present case.  Finally, the post-conviction court found that Petitioner "failed to show that the trial Judge relied on the questioned enhancement factor with more weight or with a sufficient amount of weight that it impacted or increased the sentence."  In so doing, the trial court implicitly found that even if it was error to apply the challenged enhancement factor, the remaining enhancement factors justified the sentence imposed, therefore, there was no prejudice.

Tennessee Code Annotated section 40-35-114 outlines those factors which may be considered in enhancing a defendant's sentence.  T.C.A. § 40-35-114.  A determination of whether a particular enhancing factor applies must be made on a case-by-case basis.  *State v. Walton*, 958 S.W.2d 724, 729 (Tenn. 1997).  Our review of the record supports the enhancement of Petitioner's sentence based on his prior criminal record.  T.C.A. § 40-35-114(1).  Petitioner's repeated abuse of his position as caretaker and authority figure in the child's life paired with the victim's age and her mental perception of Petitioner as someone she trusted and depended on, support enhancement of Petitioner's sentence based on his abuse of a position of public or private trust.  T.C.A. § 40-35-

114(14). We cannot conclude, however, that the record supports enhancement of Petitioner's sentence based on the victim's vulnerability because there was no proof showing that the victim suffered from a mental or physical disability, and her age, six-years-old, was not shown to make her vulnerable. T.C.A. § 40-35-114(4). Nonetheless, even if trial counsel provided deficient performance by failing to object to application of the enhancement factor or failing to raise the issue on appeal, Petitioner has shown no prejudice because the remaining enhancement factors support the sentence imposed.

## K. Cumulative Effect of Counsel's Errors

Petitioner argues that the cumulative effect of all the alleged errors deprived him of a meaningful defense. Our Court has previously held that cumulative error may in fact deprive a defendant of a fair and meaningful defense. *State v. Taylor*, 968 S.W.2d 900, 912 (Tenn. Crim. App. 1997). The post-conviction court found that "although there may have been several minor issues that could have been handled differently the Court is of the opinion that overall the representation provided petitioner meets the guidelines set out by law . . . ." After consideration of the entire record, we agree with the trial court and find that Petitioner was not deprived of a meaningful defense. Accordingly, we find this issue without merit.

## IV. Examination of Trial Counsel in Petitioner's Absence

In his final issue on appeal, Petitioner contends that the trial court erred in allowing trial counsel to testify at the post-conviction hearing without Petitioner's presence in the courtroom. Citing *Scott v. State*, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996), Petitioner argues that his presence was necessary at the post-conviction hearing to ensure adequate cross-examination of trial counsel and in the event his testimony was needed for rebuttal. He contends that the confusion regarding whether he was arraigned on the new indictment could have been resolved on rebuttal if he had been present during trial counsel's testimony.

Also relying on *Scott v. State*, the State urges this Court to hold that "the constitutional right a criminal defendant enjoys to confront and cross-examine witnesses does not apply to an already convicted petitioner who collaterally attacks his or her judgment in a civil proceeding such as a post-conviction [hearing]." In any event, the State contends that there existed "appropriate justification" here for the post-conviction court to allow trial counsel to testify without the presence of the petitioner. *Scott*, at 273. As evidence of this "appropriate justification," the State relies on those same facts cited by the trial court in making its decision to proceed with the hearing in Petitioner's absence. Specifically, the trial court, over objection from post-conviction counsel, stated as follows:

For the record we are at a point where we're trying to continue the Post Conviction Hearing for Mr. Jerome Sawyer. And, we have a delay into the later afternoon on Friday afternoon and I have a witness here from Union city. And, we are just now being advised that we do not have the defendant here. Orders were entered to have him shipped here from TDOC. TDOC either didn't get the order or didn't follow up on the order. We understood that the defendant was here. And, we spent the last hour or so trying to track him down, we can't find him. Apparently he's never been sent. So, we're at a position now where I don't have a defendant and I have an out of town witness. . . . I don't believe there's a right of confrontation in the Post Conviction Petition. I don't believe I have to have a defendant here to go forward at this point. Obviously, I don't think that the defendant is waiving his right to be here because he's not here to waive it. But, I do have an out of town witness. And, I'm going to go forward with the testimony of that witness. And, if something develops when [Petitioner] is here that I need to get [trial counsel] back here, then, we'll just have to deal with that. . . . This matter has been pending for over a year.

In *Scott v. State*, this Court addressed a similar situation in which the petitioner was removed from the post-conviction proceedings prior to his trial counsel's testimony. In determining whether the petitioner's rights had been violated, we stated as follows:

Given the fact that a post-conviction petitioner has the burden of proof, the right to appear and testify when disputed facts are at issue may well include the need for rebuttal testimony to respond to unexpected details of evidence presented through the testimony of others. Thus, absent some appropriate justification for removal, a petitioner appearing at an evidentiary hearing pursuant to the Post-Conviction Procedure Act should be allowed to remain present through the remainder of the presentation of evidence.

*Scott*, at 273. This Court concluded that there was no justification for removing the petitioner from the courtroom. However, we found that because the record did not reflect any evidence of prejudice, any error suffered as a result of the petitioner's removal from the courtroom was harmless. *Scott*, at 274.

In the present case, we have thoroughly reviewed the testimony of trial counsel and that of Petitioner. Although we cannot find "appropriate justification" for Petitioner's absence from the hearing, *see Scott*, at 273, we cannot conclude that Petitioner was prejudiced as a result of his absence during trial counsel's testimony. Petitioner's testimony at the post-conviction hearing was offered subsequent to that of trial counsel, and after a thorough, personal review of the transcript of trial counsel's post-conviction testimony. Therefore, Petitioner had the opportunity to resolve any confusion of the issues or need for rebuttal with his own subsequent testimony. Additionally, the trial court stated that should any need arise requiring trial counsel to provide further testimony, trial

counsel would be summoned back to the post-conviction court to resolve any issues. Accordingly, any error by the trial court in conducting the hearing in Petitioner's absence was harmless. Petitioner is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reason, the judgment of the post-conviction court is affirmed.

_____

THOMAS T. WOODALL, JUDGE