RICHARD WEBB, Petitioner, v. STATE OF TENNESSEE, Respondent.—475 S.W.2d 228.

August 11, 1971.

Certiorari Denied by Supreme Court December 20, 1971.

724

Clarence Walker, Chattanooga, for petitioner.

David M. Pack, Attorney General, Lance D. Evans, Assistant Attorney General, Nashville, Edward E. Davis, District Attorney General, Franklin Groves and Donnie W. Poole, Assistant District Attorneys General, Chattanooga, for respondent.

MITCHELL, J. Richard Webb, who will be referred to as the petitioner or by name, now represented by court-appointed counsel has appealed the dismissal of his post conviction petition after an evidentiary hearing from

the Criminal Court of Hamilton County, Tennessee, Honorable Russell C. Hinson, Judge presiding.

We have found no merit in the petitioner's contentions and have affirmed the judgment of the trial court.

On April 27, 1968, police officers, Detective William E. Walker and Detective Napoleon Williams went to the home of the petitioner where he lived with his mother and stepfather. Napoleon Williams, a black policeman went into petitioner's bedroom and told him they were going to take him downtown to the Detective Office to talk to him. They were investigating an armed robbery at the Plymouth Laundry at 1521 McCallie Avenue and 1609 East Third Street in Chattanooga. They invited the step-father to go with them and he rode in the same car with them. Detective Walked took him into the interrogation room at the Chattanooga Police Department, along with his step-father, where he read him his constitutional rights as required by the Miranda Rule and gave to the step-father a copy to read along with him. The following is State's exhibit #1, which is the advice and waiver referred to by this officer:

"Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also

have the right to stop answering at any time until you talk to a lawyer."

## WAIVER OF RIGHTS

"I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Signed  /s/ Richard Webb

Father—Thomas Smith

WITNESS: /s/ William E. Walker, Detective

TIME: 5:07 P. M."                                    "

The petitioner Webb gave to Detective William E. Walker the following statements or confessions in the two separate cases which were made in the presence of his step-father and which were written on the typewriter by the Detective Walker and then signed by Richard Webb, Thomas Smith, his stepfather, and the Detective Walker.

Detective Walker testified he did not question petitioner at his home but after he had fully warned him of his rights he questioned him in the interrogation room at Police Headquarters and that he took from petitioner

a voluntary statement or confession at the Police Station on each of the two robberies.

The statements or confessions are as follows:

Time 5:12 P.M.

"I Richard Lee Webb am making the following statement to Det. W. E. Walker and Det. N. Williams of my own free will and accord, I have not been promised anything or threatened in any way. I have been told of my rights and have signed a waiver.

At about 3:15 P.M. on the 2nd April, 1968, I and Richard Clay and John Walls went to the Plymouth Laundry at 1609 East 3rd Street we all three went into the Laundry and Richard Clay asked for some clothing in the name of Charles John and when Mrs. Elsie Bennett turned to get the clothing Richard Clay went behind the counter and grab her, me and John Walls got the money out of the cash register, then we ran East on 3rd Street to Solomon Lane then we ran north on Solomon Lane, we divide the money at Carver Golf Course. I got $10.00 of the money when it was divided up, then I went home.

I have read the above statement and had it read to me and it is all the truth to the best of my knowledge.

/s/ Richard Lee Webb
Richard Lee Webb

/s/ DETECTIVE W. E. Walker
Detective W. E. Walker

Richard Lee Webb father was with him when he made this statement.

/s/ Thomas Smith

Thomas Smith''

Time 5:37 P.M.

''I Richard Lee Webb am making the following statement to Det. W. E. Walker of my own free will and accord, I have not been promised anything or threatened in any way. I have been told of my rights and have signed a waiver.

At about 5:30 P.M. on the 23rd April 1968 me and Richard Clay went to the Plymouth Laundry 1521 McCallie Ave. Richard went inside the Plymouth Laundry before I did and I saw Richard Clay grab Mrs. Martin by the arm and he had a knife in the other hand and he took Mrs. Martin into the back room, and I got the money out of the cash register then I said lets go and then we ran out the front door and ran around the West side of the building and we went to the Railroad Tracks on Orchard Knob and we divided the money. I got $23.75 when we got through dividing the money up, we lost the change purse while we was running I got the change purse out from under the counter and it contained half dollars.

I have read the above statement and had it read to me and it is the truth to the best of my knowledge.

/s/ Richard Lee Webb

Richard Lee Webb

/s/ W. E. Walker
_____
Detective W. E. Walker

Richard Lee Webb father was with him when he made this statement.

/s/ Thomas Smith
_____
Thomas Smith''

On May 7, 1968, the petitioner, while represented by his private counsel Honorable Arvin Reingold a member of the Chattanooga Bar, was given a preliminary probable cause hearing before the Juvenile Court on a charge of armed robbery and was remanded to the custody of the Sheriff to be tried as an adult and was indicted June 12, 1968, on a charge of robbery by the use of a deadly weapon.

In preparation for entering a plea of guilty the petitioner and his employed counsel signed a written motion in which they requested the court to allow petitioner Webb to waive his right to a trial by jury and to submit his case to the trial judge for decision both as to guilt and punishment under the provisions of T.C.A. sec. 40-2504.

The petitioner also filed with the court a written petition to enter a plea of guilty in which he represented to the court that his counsel was Arvin Reingold. That he had received a copy of the indictment which he had discussed with his attorney and felt he understood the accusation made against him, that he had told his attorney the facts of the case, and that his attorney had fully counseled and advised him the nature and cause

of the accusation and as to the possible defenses, and the punishment, and the consequences of a plea of guilty. That he understood if he chose to do so he could plead not guilty and have a speedy public trial by jury, and to see and hear the witnesses against him and to have the benefit of the power of the court to compel the attendance of witnesses and the production of any evidence in his favor. And that he understood if he pleaded guilty the court would be authorized to immediately impose punishment as if he had stood trial and been convicted by a jury. That he offered his plea of guilty freely and voluntarily and of his own accord. This petition was signed, "Richard Lee Webb," dated September 25, 1968 and shows it was signed in open court in the presence of his attorney.

In his petition for plea of guilty he stated he believed his attorney had done all anyone could do to assist him and that he now understood the proceeding in the case against him.

The petitioner Richard Webb seventeen years of age, while represented by privately retained counsel on September 25, 1968 pleaded guilty of armed robbery in the Criminal Court of Hamilton County, Tennessee. A sentence of ten years in the State Penitentiary was imposed upon the petitioner by the trial judge Honorable Campbell Carden.

On February 9, 1970 the petitioner Webb from his place of confinement in the State Penitentiary at Nashville, filed in the Criminal Court of Hamilton County his petition for post conviction relief. The petitioner being indigent counsel was appointed for him and on April 22,

1970 an amended petition was filed on his behalf by his court appointed counsel Honorable Clarence E. Walker, an Attorney-at-Law of the Chattanooga Bar, to whom we are indebted for summarizing and clarifying the petitioner's allegations in an orderly manner. Counsel stated to the court that the amended petition contains the grounds on which petitioner relies in this case to which we now give our attention.

In his petition for post conviction relief, Richard Webb complains that he was arrested on April 26, 1968 at a time when he was seventeen years of age and confined to his home and in bed suffering from a severe case of flu, and being given medication by his mother, a licensed practical nurse. That the officers separated him from his step-father and questioned him without advising him of his constitutional rights. That they did not tell him he had a right to remain silent; that anything he might say could be used against him in a court of law; that he had a right to have an attorney present during the questioning; and that if he could not afford an attorney one would be appointed for him.

That he was led to believe that if he confessed to being present at several armed robberies in which Richard Clay was accused he would be allowed to remain at home under his mother's care, otherwise the detectives would have to take him to City Hall for questioning. That his step-father not being present, the influence of the officers prevailed and petitioner did make an admission to having been present when Eugene Clay robbed a cash register at a local dry cleaner's place of business.

That he was very much surprised, when after having made the admission, he and his step-father were taken by the police officers to the police station where he was again separated from his step-father and questioned without being advised of his rights. Then he was asked to sign a statement, which he did, not knowing what he signed. His step-father also was asked, by the officers to sign the statement as a witness, which he did. That petitioner was placed in a line-up without counsel and without being advised he had a right to have an attorney present at the line-up. That the first time he saw his privately retained counsel was at his hearing before the Juvenile Court.

That on September 25, 1968, the petitioner on the advice of his counsel did plead guilty to one charge of armed robbery and was sentenced to serve ten (10) years in the penitentiary. That he did not understand what he was doing when he signed a petition to enter a plea of guilty. That he was told there was a possibility of his receiving probation and that there was a probability of conviction due to his having made incriminating statements. He was not advised by his counsel that there were arguable grounds for suppression of his incriminating admissions on several constitutional grounds.

The petitioner prayed that he be granted an evidentiary hearing and a finding of facts supporting his allegations of constitutional violations, and such relief as may be proper under the law and the facts.

A full and complete evidentiary hearing was held by Honorable Russell C. Hinson, Judge presiding, in the Criminal Court of Hamilton County.

After the evidentiary hearing was concluded, and after due consideration, the trial judge held that the matters complained of were not grounds for post conviction relief and no finding of fact was necessary and ordered the petition dismissed.

The petitioner made a motion that the trial judge make a written finding of fact and conclusions of law as required by T.C.A. 40-3805 and T.C.A. 40-3818 which was denied by the trial judge.

From the action of the trial judge the petitioner has brought this appeal.

The petitioner contends the officers obtained incriminating statements and a confession from the petitioner in violation of his constitutional rights, and that the petitioner did not knowingly and intelligently waive his constitutional rights.

That his plea of guilty entered by the petitioner was not a voluntary knowledgeable plea of guilty and that the conviction based on the plea was void.

We think the important question is whether the plea of guilty was voluntarily and understandingly made. If it was the petition must fail. The main attack made by the allegations in the petition are directed at the taking of the petitioner's confessions.

Mrs. Smith, mother of the petitioner testified her son signed the papers (for plea of guilty) because Mr. Reingold told him it was the best thing to do. "We were all there together." That "Mr. Reingold explained to pe-

titioner what you get for armed robbery, not more than 10 years, and could get as much as 20, it had been known that they have got the electric chair, but he never knowed anybody to get the chair for armed robbery, but he could possibly ask for parole in a year." Petitioner, age 17, was in the 11th grade in high school. He had made good marks until January or February, he had made above average marks, but he had to study to make them.

He did not tell Richard he would get a parole, but said he would be eligible in a year.

Richard Webb, petitioner testified he was at the time of the post conviction evidentiary hearing age 19, that on April 26, 1968 he was 17. That April 26, 1968 Detectives Williams and Walker came to the house where he was in bed with the flu. They asked him did he know Richard Clay, they asked him other questions, he did not actually know what they were talking about, they kept asking him different questions about Richard Clay and a robbery at a Laundry on East Third Street on McCallie. They did not advise him of his constitutional rights they did not tell him he had a right to remain silent and that what he said could be used against him in a court of law. They did not tell him he had a right to an attorney to be present while he was being questioned. That Detective Walker was the one interrogated him first, and then Detective Williams started next, that his step-father was present. That he did not make any admission at that time. Then his step-father went out with Detective Walker and left him and Detective Williams alone in the room. Detective Williams told him, "tell the truth if you know anything about this, about the laundry." That he did not make any admission, the next thing he knew Detective

Walker came back into the room and Detective Williams told Walker that the petitioner had ''copped out'' to the charge.

They took him and his step-father in the police car down to the City Jail to Detective Headquarters, where he was called into a room with Detective Walker and he ''copped out to the charge'' he confessed. That the officers did not explain to him his constitutional rights as required by the Miranda Rule.

Petitioner was shown State's exhibit #1 and asked if he could tell what these papers represent and he said, ''yes, sir this is your rights up here, and this is your waiver of rights.'' That he did not at that time knowingly understand what he was signing that he signed them one after the other 2 or 3 minutes apart. The next thing he knew he was in the lineup.

With reference to the petition to enter a plea of guilty and waiver of jury trial he said that's ''my signature'' that he signed it, that he did not actually know what was going on, the lawyer said something like, ''you can go out there and talk all day, you know. I mean argue the case all day, and you know, nothing would happen, and then he told me it would be best, you know, that I could, you know cop out for ten years because instead of me going out there and testifying you know, if I lie to the judge, you know, it's supposed to make him mad.'' That ''he advised me, you know, to take the ten years, because of the things that could happen, you know.''

Thomas Smith, step-father of petitioner, testified the officers took them to the police station where Detective

Walker took petitioner in this little room, he waited in the hall four or five minutes and then they took him in the room with Detective Walker and the petitioner. The detective had his typewriter, and "he asked Richard did he want to make a statement or something, so he started typing and Ricky (Richard) started telling him about the place where they got the money from, and when he got through, he had him sign it and asked me to sign it and I signed it." That he saw Richard sign the paper that he typed. The step-father said they did not advise petitioner of his constitutional rights.

Detective Napoleon Williams, the black detective, testified that when they went to the petitioner in his house he identified himself and he told petitioner they were investigating a hold-up at the Plymouth Laundry and wanted to put him in a line-up. That the petitioner put his clothes on and he and his step-father rode with Detective Williams and Walker down to police headquarters. That the step-father asked when the hold up was supposed to have happened, they told him, and he said the boy had been in school on that particular date. While they were at the house nothing else was said about the hold-up. The questioning of petitioner took place in the interrogation room at the police station. That he was in the interrogation room only a part of the time during the questioning.

Honorable Arvin Reingold, of the Chattanooga Bar, testified he had been engaged in the practice of law thirteen years. That he was employed by the parents of Richard Webb and represented him in two armed robbery cases. That a plea of guilty was entered in one case and the other case was either not guilty or nolled.

That he discussed the plea of guilty with petitioner and advised him what he was doing. That he did all he could do to explain it to petitioner. That he pled with the Attorney General's office to allow him to plead guilty to plain robbery but the Attorney General did not agree. Counsel stated he negotiated a plea of guilty. That he talked with petitioner. That he did not remember the specific evidence whether there were incriminating statements or not he did not remember. "I think I said after he was there a year or two that they should petition the Governor for a pardon or release."

The petitioner had not reached his 18th birthday at the time he entered his plea. That he thought if he were allowed to plead guilty of robbery he would have gone back to Juvenile Court, but when it became armed robbery the Juvenile Court lost jurisdiction.

He was asked on cross-examination by petitioner's counsel whether petitioner was fearful of the death penalty, and he answered "The death penalty was never mentioned at all. It was never suggested by the Attorney General. It was not one of the motivating facts to enter a plea of guilty. No, sir."

He understood the petitioner was of good character, a good student, had better than average grades.

In State ex rel. Barnes v. Henderson, 220 Tenn. 719, 423 S.W.2d 497, the Court said:

"It is recognized in this State, as in all jurisdictions, that a plea of guilty must be made voluntarily and with full understanding of its consequences. In Brooks

v. State, 187 Tenn. 67, 72, 213 S.W.2d 7, 9 (1945), we said:

" 'A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury, it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice with full understanding of the consequences.' "

The petitioner Webb had testified that the officers questioned him at his home and that he made an admission there. The officers denied this and say that they did not question him at all about the case at his home but that the questioning of the defendant took place in the interrogation room at police headquarters. The petitioner's step-father says that they did question him at home and that they also questioned him at police headquarters and he saw them write down on the typewriter what the petitioner told them at headquarters. The step-father also testified that the officers did not at anytime explain to him his constitutional rights but he did say that he and the petitioner signed the written statements or confessions at police headquarters.

The petitioner complains that he was placed in a line-up without the benefit of counsel and was not advised that he had a right to have counsel present. The proof shows that no identification was made at the line-up and we consider the evidence of the line-up as being of no im-

portance in view of the fact that the petitioner was not identified at the line-up.

The petitioner did not actually charge that his employed counsel was ineffective but he did say in his petition that counsel did not advise him that there were arguable grounds for suppression of incriminating admission on several constitutional grounds.

The petitioner testified that his lawyer did not explain to him the form of waiving the right to a jury trial, nor did he explain to him any of the points about entering a plea of guilty, except the only thing he knew was ten years, but he knew the sentence was to be ten years.

While the privately employed counsel testified he negotiated the plea of guilty in one case and a nolle or verdict of not guilty in the other, and that he did all he could to explain it to petitioner who the proof shows was not yet eighteen but was a better than average eleventh grade high schohol student who according to his confession snatched the money from the cash drawer of the robbery victim while his co-defendant held the victim with a knife, we find petitioner was fully advised.

It was held in Floyd v. State, Tenn.Cr.App., 453 S.W. 2d 418, that:

"It has been held generally that when counsel is retained by a defendant to represent him in a criminal case he acts in no sense as an officer of the state. Davis v. Bomar, 6 Cir., 344 F.2d 84. Petitioner is not entitled to an evidentiary hearing on his allegation that his retained counsel was ineffective."

740

In McFerren v. State, Tenn.Cr.App., 449 S.W.2d 724, the Court said:

"Incompetency of counsel such as to be a denial of due process and effective representation by counsel must be such as to make the trial a farce, sham or mockery of justice."

"When counsel is retained by a defendant to represent him in a criminal case he acts in no sense as an officer of the state. For while he is an officer of the court his allegiance is to his client whose interests are ordinarily diametrically opposed to those of the state. It necessarily follows that any lack of skill or incompetency of counsel must in these circumstances be imputed to the defendant who employed him rather than to the state, the acts of counsel thus becoming those of his client and as such so recognized and accepted by the court unless the defendant repudiates them by making known to the court at the time his objection to or lack of concurrence in them."

In Shepard v. Henderson, Tenn.Cr.App., 449 S.W.2d 726 the Court said:

"The fact that the petitioners were represented by competent counsel at the time they entered their guilty pleas is 'a factor which strongly militates against the conclusion that the plea was involuntary.'" Reed v. Henderson, 385 F.2d 995 (6th Cir. 1967).

As pointed out earlier in this opinion the petitioners has placed much emphasis on the confession which he made prior to entering his pleas of guilty. He contends

that his confessions were taken in violation of his constitutional rights.

We are of the opinion such questions are not proper matters for consideration under post conviction procedure. In Floyd v. State, *supra*, the Court said:

"A writ of habeas corpus or post conviction relief is not available to test the sufficiency of evidence at the original trial. The insufficiency of evidence and the incompetency of witnesses are not matters which are reviewable by post conviction proceedings. 39 C.J.S. Habeas Corpus sec. 29(j); Fernandez v. Klinger, 9 Cir., 346 F.2d 210, cert. denied 382 U.S. 895, 86 S.Ct. 191, 15 L.Ed.2d 152."

If this were not true still the trial judge heard and determined the competency of the confessions and held against the petitioners contentions and his finding would be binding on us unless the evidence preponderates against it and we do not think it does. State ex rel. Hall v. Meadows, 215 Tenn. 668, 389 S.W.2d 256; State ex rel. Johnson v. Mainard, 188 Tenn. 501, 221 S.W.2d 531.

Moreover by pleading guilty, the petitioner has waived his right to contest the legality and admissibility of his confession. In McFerren v. State, *supra*, the Court said:

"He alleges that his confession, held or used against him as evidence, was illegally and unconstitutionally obtained and void, and that it should have been excluded."

"The United States Circuit Court of Appeals for the Sixth Circuit has held consistently that this

allegation, if true, was waived by petitioner's plea of guilty. That Court said:

" 'Conviction and sentence following a plea of guilty are based entirely upon the plea and not upon any evidence which may have been improperly acquired by the prosecuting authorities.' Reed v. Henderson, 385. F.2d 995 (6th Cir. 1967);

" 'The plea of guilty constituted a waiver of the alleged prior violation of appellant's constitutional rights.' Gray v. Johnson, 354 F.2d 986 (6 Cir. 1965)."

■ The petitioner also complains that the trial judge did not make a written finding of fact and conclusions of law as required by the post conviction procedure act.

It is difficult for us to see how the petitioner could have been benefited by a finding of fact and conclusions of law which an able, conscientious trial judge would have been compelled to make from the evidence on the evidentiary hearing. In our evaluation of the evidence we are forced to the conclusion that the petitioner voluntarily and understandingly pleaded guilty after sound advice from competent and able employed counsel. Since the petition alleged that petitioner did not understand what he was doing when he pled guilty an evidentiary hearing on that point was necessary, and the trial judge was required to make an explicit finding of fact. We find no harm to the petitioner in this case, and under T.C.A. section 27-117 overrule the assignment.

The petitioner in his testimony on cross-examination was evasive and many of his questions were answered

by saying, he "did not know" and "did not remember" or "not as I know of"; that he just glanced over the petitions before he signed them, but he did sign them. That no one threatened him or abused him or promised him anything other than ten years in the penitentiary.

He did however testify that he signed the petition and the confessions and that his lawyer advised him that it would be the best to plead guilty and admitted that he made the statements (confessions) voluntarily. But he insisted that he was not advised of his constitutional rights under the Miranda Rule and this, notwithstanding the fact that he signed the written waiver of his right to have a lawyer present when he was questioned and he did say with reference to his lawyer's advice, "he advised me, you know, to take ten years, because of the things that could happen, you know."

After the trial judge had conducted an evidentiary hearing, he then decided an evidentiary hearing was not necessary and denied the petition, and declined to make a finding of fact and conclusions of law.

The controlling factual question regarding the validity of the guilty plea did demand an evidentiary hearing, and a finding of fact thereon was required by law. However, since our review of the evidence shows the controlling facts to be undisputed, we are not required to reverse. We urge upon the trial court the importance of our having a finding of fact before us to facilitate our review in all those cases wherein an evidentiary hearing is called for.

The judgment of the trial court is affirmed.

We commend court appointed counsel for his excellent brief and his able representation of petitioner in this case.

Russell, J., concurs.

Galbreath, J. (dissenting).

In Brown v. State, Tenn.Cr.App., 445 S.W.2d 669, Judge W. Wayne Oliver, writing unanimously for this Court, said:

"Without a clear and detailed finding of fact by the trial judge, the petitioner and his counsel and the appellate court are at a complete loss to know the basis of the trial judge's decision and judgment; assignment of errors and appellate review are seriously frustrated if not completely thwarted by lack of a definitive finding of fact by the trial judge. These official shortcomings alone would require reversal of the judgment of the trial court and remand for a new trial upon the petition."

As noted in Judge Mitchell's opinion it was necessary for him to sort out the facts developed at the evidentiary hearing in order for the Court to decide the appeal. But this was, under the law, the sole function of the trial judge, and the case should have been remanded with an appropriate mandate to comply with the law. Failure to have the trial judge's finding of fact in the record leaves it incomplete and the action below reversible. Bound by a like mandate to observe the law as it is impressed on me forces me to reluctantly dissent from the majority holding that the error involved is harmless.